**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ADAM M. FINKEL,           :

                  :   CIVIL ACTION NO. 05-5525 (MLC)

    Plaintiff,      :

                  :   **MEMORANDUM OPINION**

    v.              :

                  :

UNITED STATES DEPARTMENT  :

OF LABOR, et al.      :

                  :

    Defendants.     :

_____:

**COOPER, District Judge**

    Plaintiff, Adam M. Finkel ("plaintiff"), commenced this action on November 22, 2005, in this Court, against the United States Department of Labor ("DOL") and the United States Occupational Health and Safety Administration ("OHSA", and together with the DOL, "defendants"). (Dkt. entry no. 1, Compl.) Plaintiff seeks certain information pursuant to the Freedom of Information Act ("FOIA") and brought this action when his requests were constructively denied by defendants.[1] The DOL moved for summary judgment and plaintiff cross-moved for summary judgment. (Dkt. entry nos. 11 & 12.)[2] The Court, for the

_____

    [1]    The DOL correctly argues the "only proper defendant in an FOIA action is the 'agency' as defined by 5 U.S.C. § 552(f), here the United States Department of Labor." The Court will thus dismiss the complaint insofar as asserted against OSHA.

    [2]    The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") moved for leave to appear amicus curiae. (Dkt. entry no. 93.) The motion was granted by the Court, limiting the AFL-CIO's involvement to filing of an amicus brief. (Dkt. entry no. 110.)

reasons stated herein, will (1) deny the DOL's motion, and (2) grant plaintiff's cross motion.

### BACKGROUND

Plaintiff is a research scientist and professor who holds appointments at various New Jersey universities. (Dkt. entry no. 41, Pl. Stmt. of Mat. Facts ("Pl.'s Stmt."), at ¶ 1.) OSHA is "the primary agency of the United States charged with protecting the safety and health of the workplace" and acts under the delegated authority of the Secretary of the DOL. (Id. at ¶ 2 (citing 29 U.S.C. § 651).) OSHA health standards establish exposure limits for different air contaminants that are considered toxic substances. (Dkt. entry no. 11, DOL's Stmt. of Mat. Facts ("DOL's Stmt."), at ¶ 8.) When OSHA's inspection of a facility reveals employees therein might be exposed to any of these toxic substances, it collects samples to determine the extent of employee exposure. (Id.)

Plaintiff made two requests pursuant to the FOIA for OSHA records relating to possible exposures of OHSA Compliance Safety and Health Officers ("inspectors") to unhealthy levels of beryllium. (Compl., Exs. 2 & 3). Plaintiff's first request dated June 28, 2005, seeks (1) sampling records from June 1, 1979 to June 1, 2005, in which the substance beryllium was analyzed, and (2) a list of coded ID numbers for all of the OSHA employees who had received a beryllium exposure test ("BeLPT") since January

2

2004, coded in such a way to avoid revealing the employees'
identity, and (3) the results of any analyses OSHA has undertaken
to estimate the cumulative exposures of any of its employees to
beryllium.  (Id., Ex. 2.)  Plaintiff's second separate request
dated August 12, 2005, seeks all employer sampling records from
OSHA's Salt Lake City Technical Center's analytical database
("database") beginning on or about June 1, 1979 through June 1,
2005, with the records containing either all of the fields
present in the database, or just the following fields identified
by plaintiff: (1) Date of sample, (2) Office ID number, (3)
Inspection ID number, (4) CSHO ID number, (5) IMIS analyte
number, (6) Establishment name and address, (7) Sample type
(personal, area, bulk, wipe, etc.), (8) Sample result, (9) Sample
units (ppm, ug/m3, percent, etc.), and (10) Duration of sampling.
(Id., Ex. 3.)

     Plaintiff requested the information in his capacity as
Professor of Environmental and Occupational Health at the
University of Medicine and Dentistry of New Jersey, School of
Public Health.  (Id., Ex. 2.)  Plaintiff's request explained that
he wanted the information "in order to conduct statistical
analyses of trends in beryllium concentrations by time period,
geographic region, industry sector, etc., and to estimate the
exposure potential of the OSHA compliance officer workforce, a
population recently found to have an unexpectedly high rate of

sensitization to beryllium." (Id.)  Plaintiff further explained
the requested information is in the interest of the general
public "in order for the public to better understand the
quantitative relationship between exposure to beryllium and the
probability that an exposed individual will become sensitized to
beryllium" and to "significantly advance public understanding of
the operations and activities of OSHA with regard to beryllium
exposure within its workforce." (Id.)

Plaintiff filed administrative appeals after failing to
receive a substantive response to either request.  (DOL's Stmt.,
at ¶ 3.)  Plaintiff brought this action after OHSA was admittedly
non-responsive to his requests and appeals.  (Id.; see Compl.)

As required by 29 C.F.R. § 70.26(h), OSHA published a notice
of plaintiff's lawsuit and underlying FOIA requests in the
Federal Register.  (DOL's Stmt., at ¶ 4.)  The notice solicited
"comments from affected employers in order to determine whether
public release, in a form that identifies specific employers or
workplaces, of sampling data that indicates chemical identities
and the use or presence of particular chemicals or substances,
would disclose confidential commercial or trade secret
information." (Id.)  OSHA received responses from ten employers,
nine trade associations, one entity that failed to state its
interests in the matter, and the AFL-CIO.  (Id. at ¶ 5.)  All of
the employers and trade associations objected to release of the

4

sampling data in a form that identifies specific employers or worksites.  (Id.)  Of those who objected, all but one "mentioned that disclosure of the records plaintiff requested would reveal trade secrets and/or confidential commercial information."  (Id.; see dkt. entry no. 11, Exs. attached to Decl. of Kevin Ropp ("Ropp Decl.").)  However, none of the employers submitted affidavits or declarations to support claims of confidential or trade secret information.  (see Exs. to Ropp Decl.)

The DOL subsequently released the sampling records from the database requested by plaintiff, but withheld: (1) employers' names and addresses, (2) day of the inspections, (3) inspection ID numbers, (4) OSHA Office ID numbers, and (5) CSHO ID numbers. (DOL's Stmt, at ¶ 6.)  The DOL also released to plaintiff the BeLPT test results of the OSHA employees who took the test, but substituted randomly-assigned ID numbers for the coded ID numbers that consist of the last four digits of the OSHA employee's Social Security number.  (Id. at ¶ 7.)  Plaintiff, however, maintains that the data provided by the DOL is unresponsive and does not contain information that he can use for the purposes outlined in his two requests.  (Dkt. entry no. 96, Finkel Opp. Decl.)

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the

6

[non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion. Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990). Instead, Rule 56(e) provides that the Court may grant the unopposed motion "if appropriate". Id.; see Carp v. Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'"). An unopposed motion

is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.

## II.  Freedom of Information Act

The FOIA requires government agencies to make their records available to members of the public upon request.  5 U.S.C. § 552. Unless one of nine specific exemptions under the FOIA applies, agencies are required to furnish requested records.  5 U.S.C. § 552(b).  There is a strong presumption in favor of disclosure because the FOIA's purpose is "to facilitate public access to Government documents."  Hecht v. U.S. Agency for Int'l Dev., No. 95-263, 1995 WL 33502232, at *5 (D. Del. Dec. 18, 1996) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).  "An agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions.  The agency bears the burden of justifying the withholding, and the [district] court reviews the agency claims of exemption de novo."  OSHA Data/CIH Inc. v. U.S. Dep't of Labor, 220 F.3d 153, 160 (3d Cir. 2000) (cites and quotes omitted), see 5 U.S.C. § 552(a)(4)(B).

"The agency may meet [its] burden by filing affidavits describing the material withheld and detailing why it fits within the claimed exemption."  McDonnell v. United States, 4 F.3d 1227, 1241 (3d Cir. 1993) (cites and quotes omitted).  The Court will grant summary judgment in the agency's favor "only when the

agency's affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption . . . , and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Davin v. U.S. Dep't of Justice, 60 F.3d 1043, 1050 (3d Cir. 1995) (cites and quotes omitted), modified on other grounds, Abdelfattah v. U.S. Dep't of Homeland Sec., No. 06-4106, 2007 WL 1544503 (3d Cir. May 30, 2007); see McDonnell, 4 F.3d at 1241 (noting the "significance of agency affidavits in a FOIA case cannot be underestimated").

The FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Thus, "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." Abdelfattah, 2007 WL 1544503, at *5. The agency bears the burden of proving that the withheld material is not segregable, and must "provide a factual recitation of why certain materials are not reasonably segregable." Davin, 60 F.3d at 1052.

### A.    Exemption 4

Exemption 4 permits an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  The DOL argues it has properly withheld "the names and addresses of the employers from which each sample was obtained, and other potentially identifying information, to protect trade secrets and confidential information."  (Dkt. entry no. 11, Def. Br., at 13.)  More specifically, DOL asserts (1) the site-specific sampling data is confidential because employers voluntarily submit to OSHA inspections, (2) even if the site sampling data is not "confidential commercial information," the data includes trade secrets that cannot reasonably be segregated, (3) disclosure of the withheld information would impair both the reliability of sampling data obtained by OSHA in the future and OSHA's administrative efficiency and effectiveness, (4) disclosure of the inspection ID number, OSHA office ID number, or the specific day on which an inspection occurred could be combined with other publicly available information to identify the employer that yielded the sample.  (Id. at 17-23.)

Plaintiff argues (1) the DOL has not met its burden of showing that there are confidential commercial information or trade secrets in the database, (2) plaintiff is conclusively entitled to release of all inspection records from ten years ago

and beyond because OSHA's own regulations offer no protection for these records, (3) the DOL's assertions that disclosure will impede future inspections is "makeweight and unsupported." (Dkt. entry no. 95, Pl. Br., at 7-19.)

The Court undertakes a two-part inquiry in determining whether Exemption 4 prohibits disclosure of the withheld material. "If the requested documents constitute trade secrets, they are exempt from disclosure, and no further inquiry is necessary." Pub. Citizen Health Research Group v. Food & Drug Admin., 704 F.2d 1280, 1286 (D.C. Cir. 1983). "If the health and safety data represent only commercial information, their exempt status turns on the sufficiency of the appellees' showing of confidentiality." Id.

### 1. Trade Secret

For purposes of Exemption 4, a trade secret is "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." Id. at 1288.

The DOL argues "[l]ess than approximately 2% of the samples at issue here were designated as trade secrets by the employers from whom OSHA obtained them" but that they are only so designated in the individual files, and the database plaintiff seeks does not contain the trade secret designations. (Def. Br.,

at 21-22.)  The DOL thus argues that it is not required to
reorganize its files to find and segregate the less than 2% of
files containing trade secrets in the database.  (Id.)

     The DOL's explanation that less than 2% of the samples at
issue contain material designated as trade secrets by the
employer, without more, does not justify withholding the "names
and addresses of the employers from which each sample was
obtained, and other potentially identifying information" in all
of the database samples provided to plaintiff.  The DOL's single
statement in its affidavit that 2% of samples contain information
designated by the employer as trade secrets does not "describe
the withheld information and the justification for withholding
with reasonable specificity, demonstrating a logical connection
between the information and the claimed exemption."  Davin, 60
F.3d at 1050.  The DOL's affidavits and employer responses fail
to identify the nature or type of trade secrets, or even how they
are designated as such by employers in the sampling process.
Although the DOL is not required to reorganize its files, it is
required to disclose material that is "reasonably segregable,"
and the Court further finds the less than 2% of documents
containing trade secrets are readily segregable from the 98% of
the documents that admittedly are not designated as containing
any trade secrets.

The inspection ID number, the OSHA office ID number, and the exact day of the inspection also fail to meet the narrow definition of trade secrets under the FOIA.  The DOL argues this information, if disclosed, could be "combined with other publicly available information [to] lead to the identification of the employers that yielded the samples at issue."  (Def. Br., at 23.) The potential of this information being used to reveal the employers' identities is not only too tenuous to support exemption under the FOIA, as discussed infra, but more importantly does not make that information a trade secret.  Here, as in Public Citizen, "[t]he relationship of the requested information to the productive process is tangential at best; under no plausible reading of the phrase 'plan, formula, process, or device' could the [information sought] be said to fall within its ambit."  704 F.2d at 1290.  Accordingly, the Court concludes that the DOL's second argument as to information being protected as a trade secret pursuant to Exemption 4 must also fail.

### 2.    Confidential Commercial Information

"In order to bring a matter (other than a trade secret) within [Exemption 4], it must be shown that the information is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential."  Nat'l Parks & Conservation Assoc. v. Morton, 498 F.2d 765, 766 (D.C. Cir. 1974).  No party disputes the information sought by plaintiff is commercial.  Although the

DOL argues that the information sought by plaintiff was not "obtained from a person," the Court finds this argument is without merit.  The FOIA defines the meaning of "person" within the FOIA to include "an individual, partnership, corporation, association, or public or private organization other than an agency."  5 U.S.C. § 551(2).  Moreover, "employers" are persons within the meaning of the FOIA.  OSHA Data, 220 F.3d at 162 n.23 (rejecting DOL's argument that the information sought was not "obtained from a person" since it was a figure calculated by DOL from components obtained from employers and therefore "from a person").

The parties disagree on the standard to apply in determining whether the information is confidential for purposes of Exemption 4.  Defendant relies upon the test articulated in Critical Mass Energy Project v. Nuclear Regulatory Commission, 975 F.2d 871 (D.C. Cir. 1992), whereas plaintiff relies upon the test articulated in Nat'l Parks, supra.  Under the Nat'l Parks test, commercial or financial matter is confidential for purposes of Exemption 4 "if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person

from whom the information was obtained." Nat'l Parks, 498 F.2d

at 770; OSHA Data, 220 F.3d at 162 n.24.[3]

In Critical Mass, the court therein reaffirmed Nat'l Parks

as providing the "test for determining the confidentiality of

information submitted under compulsion." 975 F.2d at 879

(emphasis added). The court also held that "financial or

commercial information provided to the Government on a voluntary

basis is 'confidential' for the purposes of Exemption 4 if it is

of a kind that would customarily not be released to the public by

the person from whom it was obtained." Id. (emphasis added);

compare, Canadian Comm. Corp. v. Dep't of Air Force, 442

F.Supp.2d 15, 29 (D.D.C. 2006) (noting if information were

_____

[3]      The Third Circuit in OSHA Data cited to Nat'l Parks as
the "leading case interpreting Exemption 4." 220 F.3d at 162
n.24. However, the Court went on to note that it was unnecessary
to "reach the question whether the information was in fact
provided voluntarily or by regulatory compulsion," and therefore
did not address the merits of the DOL's argument that "if the
requested information were deemed to have been provided
voluntarily by submitters, rather than provided pursuant to
compulsory regulation, the DOL would have an even more heightened
responsibility to keep the information confidential." Id. at
166, n.30. Thus, plaintiff's argument that the Third Circuit has
conclusively adopted the Nat'l Parks standard and thereby
rejected Critical Mass is not accurate. (Pl. Br., at 7.)
However, other District Courts in the Third Circuit appear to
rely on Nat'l Parks rather than Critical Mass, although without
discussing the differences in the two standards or the
significance of whether the information was provided voluntarily
or involuntarily. See Hecht, 1995 WL 33502232, at *7 (noting the
test established in Nat'l Parks "has been adopted by every other
court of appeals that has considered it"); Clarke v. U.S. Dep't
of Treasury, No. 84-1873, 1986 WL 1234, at *2 (E.D. Pa. Jan. 28,
1996) (applying Nat'l Parks test).

voluntarily provided the Critical Mass test would apply, but if
it was submitted involuntarily, Nat'l Parks test applied), with
N.Y. Pub. Interest Group v. U.S. Envtl. Prot. Agency, 249
F.Supp.2d 327, 335 (S.D.N.Y. 2003) (comparing Critical Mass and
Nat'l Parks tests, and finding that Nat'l Parks "adequately
accommodates both voluntarily submitted and compelled
information").

The Court finds that the information here was not
voluntarily provided and will therefore apply the Nat'l Parks
test.  The DOL's argument that the information was voluntarily
provided "because (with rare exception) employers did not insist
on search warrants" is without merit.  (Dkt. entry no. 11, Def.
Br., at 16.)  OSHA obtained the data through its regulatory
authority to "enter without delay and at reasonable times" any
workplace in order to "inspect and investigate . . . any such
place of employment and all pertinent conditions, structures,
machines, apparatus, devices, equipment and materials therein . .
. ."  29 U.S.C. § 657(a).  Thus, the information was provided
"pursuant to regulatory compulsion."  OSHA Data, 220 F.3d at 162
n.24.  Thus, the Court concludes the information was not
submitted voluntarily, regardless of whether OSHA was required to
obtain a warrant in order to collect the information.

The Court also notes DOL's argument that the information is
provided voluntarily is undermined because its own arguments on

16

the impact of disclosure focus on the detrimental impact on reliability of information, not the resulting unavailability of information.  Reliability of information is a government interest implicated where the information is provided involuntarily, whereas the government interest as to information voluntarily provided is ensuring its continued availability.  Critical Mass, 975 F.2d at 878 (noting "when information is obtained under duress, the Government's interest is in ensuring its continued reliability; when that information is volunteered, the Government's interest is ensuring its continued availability"), Nat'l Parks, 498 F.2d at 770 (where information is supplied to government pursuant to "statute, regulation, or some less formal mandate . . . there is presumably no danger that public disclosure will impair the ability of the Government to obtain this information in the future").

The DOL argues that the information withheld pursuant to Exemption 4 is confidential under the first prong of the Nat'l Parks test because "its disclosure would likely impair both the reliability of samples obtained by OSHA in the future and OSHA's efficiency and effectiveness in executing its inspection program."  (Def. Br., at 17.)  More specifically, the DOL argues "[d]isclosure of the substances present at specific establishments inspected by OSHA would likely discourage those establishments from cooperating with OSHA inspectors, thus

17

resulting in an increase in the rate of employers' insistence of
search warrants."  (Def. Br., at 20.)

     The DOL fails to convince the Court that disclosing the
information sought by plaintiff will create an additional
incentive for employers to obtain warrants in order to postpone
inspections so that the employer can "prepare by temporarily
eliminating or reducing the amount of toxic substances . . . thus
impairing the reliability of the information collected by OSHA."
(Id.)  More importantly, the DOL cannot claim that an increase in
the number of warrants sought by employers prior to inspections
will impair the effectiveness of inspections, and thus also the
reliability of sampling information, because the Supreme Court
has already addressed and rejected similar arguments.  In
Marshall v. Barlow's, Inc., 436 U.S. 307 (1978), the Supreme
Court addressed the impact of allowing employers to require OSHA
inspectors to obtain warrants before entering their facilities on
OSHA effectiveness.  This Court, as was the court in Marshall, is
"unconvinced [] that requiring warrants to inspect will impose
serious burdens on the inspection system or the courts, will
prevent inspections necessary to enforce the statute, or will
make them less effective" where there is no evidence of "any
widespread pattern of refusal."  Id. at 316.

     The Court further finds the DOL's argument that an increase
in employer requests for warrants will give employers more time

18

to eliminate potential violations, thus impairing the reliability and effectiveness of OSHA inspections, is undermined by the availability of advance compulsory process or <u>ex parte</u> warrants. OSHA inspectors are authorized to obtain "[c]ompulsory process . . . in advance of an attempted inspection or investigation if, in the judgment of the Area Director and the Regional Solicitor, circumstances exist which make such preinspection process desirable or necessary."  29 C.F.R. § 1903.4(b).  Thus, it is not "immediately apparent why the advantages of surprise would be lost if, after being refused entry, procedures were available [] to seek an <u>ex parte</u> warrant and to reappear at the premises without further notice to the establishment being inspected." <u>Marshall</u>, 436 U.S. at 320.

The Court therefore concludes the DOL has not met its burden of demonstrating that disclosure of the site-specific sampling information such as inspection ID number, OSHA office ID number, or the specific day on which an inspection occurred will "impair the Government's ability to obtain necessary information in the future."  <u>Nat'l Parks</u>, 498 F.2d at 770; <u>OSHA Data</u>, 220 F.3d at 162 n.24.

**B.   Exemption Six**

Exemption 6 allows agencies to withhold information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(6). The DOL argues it "properly withheld under Exemption 6 the 'coded ID numbers' of OSHA employees who underwent the beryllium lymphocyte proliferation test (BeLPT) for beryllium sensitization" because they are "contained in medical files covered by Exemption 6" and "deducing the OSHA employee's identify from the 'coded ID number' would not be difficult" since they consist of the last four digits of their Social Security numbers. (Def. Br., at 28.)

Plaintiff argues that the DOL's "arguments about how someone could conceivably gain the identity of the inspectors fall well short of what the law would require to invoke a legitimate privacy interest." (Pl. Opp. Br., at 26.) Plaintiff also cites "the public's strong interest in correlating the inspectors who have tested positive with the cumulative history of the workplaces they inspected, which would help the agency do a better job of protecting both its inspectors and the approximately 130,000 employees who are exposed to beryllium on a daily basis." (Id.)

When reviewing an agency's withholding of records on the basis of Exemption 6, the Court must determine "whether the information sought is to be found in personnel, medical or similar files, and if so, whether its release would constitute a clearly unwarranted invasion of personal privacy." Arieff v. U.S. Dep't of Navy, 712 F.2d 1462, 1466 (D.C. Cir. 1983).

"[I]nvocation of Exemption 6 requires threats to privacy interests more palpable than mere possibilities . . . and [] courts may properly discount [the] probability of invasion of privacy in light of attendant circumstances." <u>Id.</u> at 1467 (cites and quotes omitted).

"[T]he balance to be drawn under Exemption 6's clearly unwarranted invasion of personal privacy clause is one between the protection of an individual's private affairs from [u]nnecessary public scrutiny, and the preservation of the public's right to governmental information." <u>Dep't of Air Force v. Rose</u>, 425 U.S. 352, 381 n.19 (U.S. 1976); <u>McDonnell</u>, 4 F.3d at 1251 (Exemption 6 analysis "involves a balancing of the public interest served by disclosure against the harm resulting from the invasion of privacy"). The Court "must keep in mind that there is a presumption in favor of disclosure" and that "Congress' dominant objective under FOIA to provide full disclosure." <u>McDonnell</u>, 4 F.3d at 1252; <u>Citizens for Env. Quality v. U.S. Dep't of Agriculture</u>, 602 F.Supp. 534, 538, 540 (D.D.C. 1984) (denying agency's summary judgment motion and granting plaintiff's motion for summary judgment "in light of the heavy burden on the government under Exemption 6, and the government's failure to submit facts creating more than a mere possibility of identification or to controvert the plaintiff's assertion of the public's interest in the documents sought").

The Court finds the DOL has not met its burden of showing that release of the inspectors' "coded ID numbers" would constitute a clearly unwarranted invasion of the inspectors' personal privacy.  Rather, the DOL has "established no more than a 'mere possibility' that the medical condition of a particular individual might be disclosed - which the Supreme Court has told us is not enough."  Arieff, 712 F.2d at 1467.  Moreover, the crux of the DOL's privacy argument is that the "coded ID numbers" used in the BeLPT test results contain the last four digits of the inspectors' social security numbers.  (Def. Br., at 28-29.)  However, OSHA has otherwise discontinued use of the last four digits of inspectors' social security numbers by creating new ID numbers that do not contain any social security numbers.  (Dkt. entry no. 11, Ex. 4, Decl. of Kevin Fairfax, at ¶ 14.)  Thus, the problem identified by the DOL is easily remedied by replacing the "coded ID numbers" with the newer inspector ID numbers that do not contain the social security numbers in each of the BeLPT test results.  As of March 2005 there were only approximately 300 inspectors tested.  (Pl. Stmt., at ¶¶ 34-35.)  Thus, the ID numbers containing social security numbers are "reasonably segregable" from the test results because the DOL only has to change the ID number on approximately 300 test results.  Davin, 60 F.3d at 1052.

Based upon the Court's determination that the DOL has failed to meet its heavy burden on the issue of whether disclosure will invade the inspectors' privacy, the Court need not "resolve the balance between any invasion of privacy and the public's interest in disclosure." Citizens for Env. Quality, 602 F.Supp. at 539; see Wine Hobby USA, Inc. v. U.S. Internal Rev. Serv., 502 F.2d 133, 136 (3d Cir. 1974) (holding that court "must determine whether release of the [information] would constitute an invasion of personal privacy and, if so, balance the seriousness of that invasion with the purpose asserted for release") (emphasis added). However, the Court notes that plaintiff raises a legitimate public interest in the information sought because his proposed research concerns OSHA's response to beryllium sensitization amongst its own inspectors and the general workforce, and "information material for monitoring the Government's activities is the core purpose of the FOIA." compare, Arieff, 712 F.2d at 1468, with Wine Hobby, 502 F.2d at 137 (concluding invasion of privacy was clearly unwarranted "in light of [plaintiff's] failure to assert a public interest purpose for disclosure").

## C.  Exemption Seven

Sections C and E of Exemption 7 permit an agency to withhold:

> records or information compiled for law enforcement
> purposes, but only to the extent that the production of

> such law enforcement records or information . . . (C)
> could reasonably be expected to constitute an
> unwarranted invasion of personal privacy, [or] (E)
> would disclose techniques and procedures for law
> enforcement investigations or prosecutions, or would
> disclose guidelines for law enforcement investigations
> or prosecutions if such disclosure could reasonably be
> expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(C)&(E).

The DOL argues it has properly withheld the inspector ID numbers pursuant to Exemption 7(C) "to protect the personal privacy of its CSHOs" because the ID numbers are "an integral part of the CSHOs' identities" and "[p]ublic knowledge of a CSHO's identify could lead to harassment of CSHOs on the job." (Dkt. entry no. 11, Def. Br., at 25-26.)[4]  The DOL argues it has properly withheld the inspectors' ID numbers pursuant to Exemption 7(E) "to preclude the compilation of CSHO profiles that would reveal techniques or procedures used for law enforcement investigations or prosecutions."  (Def. Br., at 27.)  More specifically, the DOL argues that disclosure of the inspectors' ID numbers could lead to "computerized profiling of a CSHO's proclivities to cite particular violations or higher penalties" which would "enable employers to be less cooperative with, or deny entry to, certain CSHOs."  (Id. at 27-28.)

_____

[4]    At issue for purposes of Exemption 7 are the newer inspector ID numbers that do not contain any social security numbers. (Dkt. entry no. 11, Ex. 4, Decl. of Kevin Fairfax, at ¶ 13-16.)

Plaintiff argues that the DOL has not met its burden of demonstrating that it can withhold the inspectors' ID numbers pursuant to Exemption 7 because (1) the records are not compiled for law enforcement purposes, (2) disclosure would not warrant an "unwarranted invasion of personal privacy," and (3) disclosure would not reveal techniques and procedures used for investigations or prosecutions.  (Id. at 30-36.)

The Third Circuit has recently clarified the test announced in Davin v. United States Department of Justice, 60 F.3d 1043, 1056 (3d Cir. 1995), for evaluating whether materials withheld under Exemption 7 are "records or information compiled for law enforcement purposes."  Abdelfattah, 2007 WL 1544503, at *1. "[A]n agency seeking to invoke Exemption 7 does not have to identify a particular individual or incident as the object of an investigation into a potential violation of law or security risk."  Id. at *5.  Exemption 7, however, "still requires an agency to demonstrate that the relationship between its authority to enforce a statute or regulation and the activity giving rise to the requested documents is based upon information sufficient to support at least a colorable claim of the relationship's rationality."  Id. (holding that agency failed to identify any connection between its law enforcement authority and the information contained in the withheld material).  "[S]imple recitation of statutes, orders and public laws is an insufficient

25

showing of a rational nexus to a legitimate law enforcement concern." Id. (quoting Davin, 60 F.3d at 1056). Exemption 7 "also requires a balancing of the privacy interests at risk against the public interests, if any, that would be served by disclosure." Manna v. U.S. Dep't of Justice, 51 F.3d 1158, 1165 -66 (3d Cir. 1995).

The Court concludes that the records at issue are compiled for law enforcement purposes because they were collected in the course of OSHA acting pursuant to its statutory authority to inspect workplaces, question employees, and cite employers violating safety and health regulations. Cooper Cameron Corp. v. U.S. Dep't of Labor, Occupational Safety & Health Admin., 280 F.3d 539, 545 (5th Cir. 2002) (holding civil law-enforcement records of agencies, including OSHA, fall under Exemption 7). Plaintiff does not cite any authority to the contrary, with the exception of that portion of the test in Davin, supra, requiring "the government must identify a particular individual or incident to a potential violation of law or security risk" that was recently clarified in Abdelfattah, supra.

The Court finds the public interest in disclosing information that will increase understanding about beryllium sensitization and OSHA's response thereto is significant. This public interest sufficiently outweighs the inspection officers' limited privacy interests in their ID numbers. These ID numbers

are not inextricably linked to the inspectors' identity because
they do not contain their social security numbers or any other
identifying information.

The inspection officers' privacy interests in their ID
numbers are more limited than the interests of other law
enforcement personnel in more readily identifying personal
information, and the public interest in disclosure is more
compelling, than in the cases relied upon by the DOL. See e.g.,
Manna, 51 F.3d at 1166 (approving government's denial of
information pertaining to identities of law enforcement personnel
pursuant to Exemption 7(C) where information requested by
convicted organized crime figure for purposes of supporting
"unfounded" complaints of government misconduct in his
prosecution); McDonnell, 4 F.3d at 1255-56 (privacy interests in
information relating to identities of law enforcement personnel
and others involved in criminal investigation outweighed public
interest in disclosure of government investigation following
ocean liner disaster); Hale v. U.S. Dep't of Justice, 973 F.2d
894, 902 (10th Cir. 1992) (affirming government's decision to
withhold pursuant to Exemption 7(C), inter alia, FBI employees'
identification numbers and personnel directories containing their
names and addresses for purposes of a "trivial matter of no
genuine public interest"), vacated and remanded on other grounds,
509 U.S. 918 (1993); Nix v. United States, 572 F.2d 998, 1006

27

(4th Cir. 1978) ("While the right of privacy to these FBI agents is perhaps minimal, we find that the public interest in the identification of the FBI agents who conducted the investigation of the alleged civil rights violation of Nix to be even less").

### CONCLUSION

The DOL has not met its burden of justifying its decision to withhold the requested material pursuant to Exemptions 4, 6, or 7 of the FOIA.  The Court will therefore grant plaintiff's cross motion for summary judgment and deny the DOL's motion for summary judgment.  The Court will issue an appropriate order.[5]

> s/ Mary L. Cooper
> **MARY L. COOPER**
> United States District Judge

---

[5]    If the DOL has any claims of attorney-client privilege, contractual confidentiality, or the like, it may submit a log listing and describing each such claimed privileged document within thirty days of the Court's issuing this memorandum opinion and order.  Failure to submit a log within that time frame will result in judgment being entered in plaintiff's favor pursuant to this memorandum opinion.  If a log is submitted, judgment will be entered following any such supplemental proceedings the Court finds necessary.